## BOARD OF COMMISSIONERS OF JASPER COUNTY v. BABCOCK.

[No. 5,055. Filed June 22, 1904.]

COUNTIES.—*County Reform Law.— Election Commissioners.—Printing Election Ballots.—Appropriations.*—A complaint to recover the cost of printing and delivering election ballots ordered by the county board of election commissioners is bad, where it is not averred that there was an existing appropriation to pay for such services as rendered by plaintiff.

From Newton Circuit Court; *Frank A. Comparet,* Special Judge.

Action by Frank E. Babcock against the Board of Commissioners of Jasper County. From a judgment in favor of plaintiff, defendant appeals. *Reversed.*

*J. E. Wilson,* for appellant.
*William Darroch* and *E. P. Honan,* for appellee.

ROBINSON, J.—Transferred from the Supreme Court, under §1337m Burns 1901.

Suit by appellee for printing and delivering county and township ballots for the general election in November, 1902. The ballots were ordered by the county board of election commissioners. Neither of the three paragraphs of complaint avers that there was an existing appropriation to pay for such services as those rendered by appellee. 'A demurrer was overruled to each paragraph of complaint, and a demurrer sustained to the second paragraph of answer, alleging that the county council at the September session, 1901, appropriated $80, and no more, for printing and stationery for the November election, 1902, and made no further appropriation afterwards; that appellee, knowing that this sum, and no more, had been appropriated, caused to be printed and delivered the ballots, and filed his

claim for $111; that the claim was allowed before the bringing of this action, and the auditor drew his warrant to the appellee in the sum of $80. Verdict and judgment in appellee's favor for $111.

Section 5594v Burns 1901 (Acts 1899, p. 343, §16) provides that before the Thursday following the first Monday in August of each year, every county officer shall prepare an itemized estimate of the amount of money required for his office for the ensuing calendar year. Section 5594y Burns 1901 provides that every estimate required to be prepared by the board of county commissioners "shall embrace, in items separate from each other, each of the following matters: * * * Ninth. Amounts required for election expenses, showing estimated number of precincts, and by separate items, the amounts required for each of the following things: Pay of inspectors, judges, clerks, sheriffs, rent, meals, hauling and repair of booths and ballot-boxes, advertising, bill-posting, printing and stationery, expenses of election commissioners, expense of constructing or purchasing election furniture and supplies." By §5594e1 Burns 1901 it is provided that "no board of county commissioners, officer, agent or employe of any county shall have power to bind the county by any contract or agreement, or in any other way, to any extent beyond the amount of money at the time already appropriated by ordinance for the purpose of the obligation attempted to be incurred, and all contracts and agreements, express or implied, and all obligations of any and every sort, beyond such existing appropriation, are declared to be absolutely void." Section 5594f1 Burns 1901 imposes a fine and imprisonment upon county officers and members of the board "who shall issue, or cause to be issued, any bond, certificate, or warrant for the payment of money which shall purport to be an obligation of such county, and be beyond the unexpended balance of any such appropriation made for such purpose, or who shall attempt to bind such

county by any contract, agreement, or in any other way, to an extent beyond the amount of money at the time already appropriated by ordinance for such purpose, and remaining at the time unexpended."

The general election law (§6214 *et seq.* Burns 1901) creates the county board of election commissioners, who are to serve without compensation, and makes it the duty of the board to prepare and distribute ballots for elections of all officers to be voted for in such county, other than those who are to be voted for by all of the electors of the State. Under certain conditions ballots may be ordered printed by an election board. §6234 Burns 1901. The work of printing the ballots can not begin more than fifteen days before the day of the election, and the ballots must be ready for the inspectors three days before the election. In the preparation, printing, and distribution of the ballots, the statute requires great care on the part of the persons charged with these duties. The board is not required to let the contract for printing the ballots on competitive bids. As the work must be done with great particularity and within a limited number of days, and is of an important public character, the legislature evidently thought best to leave the matter with the board of election commissioners, to be determined by them under all the circumstances existing at the time. The board had authority to order the printing of the ballots, and before the passage of the county reform law the county was liable for the reasonable value of the work. *Board, etc.,* v. *Menaugh,* 13 Ind. App. 311. The question, then, is, does the county reform law apply?

It has been held by this court *(Board, etc.,* v. *Menaugh, supra)* that the "county board of election commissioners is not a county officer within the purview of the Constitution or of the act of 1875." The special duty required of the county board of election commissioners has reference not merely to the county ballots, but also to all officers

to be voted for in that county, other than those to be voted for by all the electors of the State. This includes congressional, joint senatorial and representative, and township, as well as county, candidates. For this reason it may be said that the board, although called the "county board of election commissioners," with power to impose a liability upon the county, is not a county officer. And for the same reason it might be said it is not the agent of the county. However, having power to create a liability against the county by contract, it can not be said that it is not the special agent of the county for that particular business. If it can make a contract binding upon the county, it must do it through some relation it bears to the county. It is true the present election law was in force when the county reform act was passed, and that no reference is made in the latter to expenses to be incurred by the board of election commissioners in the printing of ballots. But in the itemized estimate of election expenses to be prepared by the board of county commissioners is the item of printing and stationery. This estimate includes also the items of advertising and bill-posting, so that practically the only printing to be done, aside from the advertising, would be printing the ballots.

Moreover, §5594b1 Burns 1901 specifies the instances in which an appropriation by the county council shall not be necessary to authorize a warrant drawn and payment made out of the county treasury, but the expense of printing election ballots is not one of the instances. After enumerating these exceptions that section concludes: "In all the above enumerated instances payment may be made out of the county treasury upon the authority and in the manner prescribed by law without appropriations by the county council. In all other instances no warrant shall be drawn upon, or money paid out of the county treasury, unless an appropriation by the county council therefor has been made, for the calendar year in which the payment is

made, and which appropriation remains unexhausted." This language is plain and needs no construction. The legislature having expressly enumerated the exceptions, we can not read into the statute an additional exception which presumably was intentionally omitted.

It is true that the time within which the ballots must be printed and made ready for distribution is limited, that great care is required by the statute in doing the work, and that it is necessary that the work should be done within the limited time; yet it is not clear that an estimate of the expense of printing the ballots can not be made with as much certainty as many other of the estimates required by the statute. It can not be presumed that an estimate or an appropriation by the county council will be so inadequate as to make it impossible for the board to have the work done. If unexpected conditions should arise when the ballots are to be printed, and it is not possible to have the work done for the amount appropriated, we think there is no question that an additional appropriation might be made under the provisions of §5594a1 Burns 1901. See *Turner* v. *Board, etc.,* 158 Ind. 166; *Board, etc.,* v. *Mowbray,* 160 Ind. 10; *Gish* v. *Board, etc.,* 31 Ind. App. 485.

We think the claim appellee seeks to recover is within the statute, and, for failure to aver an existing appropriation by the county council to pay the claim, the demurrer to the complaint should have been sustained.

Judgment reversed.